# P. M. ERICKSON v. AMERICAN INSURANCE COMPANY.[1]

January 14, 1927.

No. 25,755.

**Verdict for plaintiff sustained.**
1. The verdict is sustained by the evidence.

**Rulings and instructions.**
2. There was no reversible error in the rulings or instructions.

Fire Insurance, 26 C. J. p. 539 n. 75; p. 562 n. 55.

Defendant appealed from an order of the district court for Hennepin county, Nye, J., denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*William Furst,* for appellant.
*John N. Berg,* for respondent.

TAYLOR, C.

Suit upon an insurance policy for the value of an automobile destroyed by fire. Defense that plaintiff did not own the automobile. Verdict for plaintiff and defendant appeals from an order denying its alternative motion for judgment non obstante or for a new trial.

The only important question presented is whether the evidence is sufficient to sustain the verdict. Defendant contends that the evidence will not justify a finding that plaintiff was the owner of the automobile when he obtained the policy; and further contends that even if he was then the owner, he had transferred the title before the fire by executing the contract known as Exhibit 1.

The jury having found for plaintiff we must take the view of the evidence most favorable to him. The jury could find from the evidence that plaintiff purchased the automobile, a "used" Packard touring car, from A. C. Templeton, Incorporated, on August 10, 1921, for the sum of $1,800, of which he paid $500 in cash and agreed to

[1]Reported in 211 N. W. 830.

pay the remaining $1,300 in twelve monthly payments, and that he borrowed the $500 paid in cash from a bank upon his promissory note signed by Dr. A. C. Lundgren as surety. It is conceded that the car was delivered to him by the Templeton company on August 10th; that he registered it and took out the license in his own name; that he took out the policy in question in his own name on August 11, 1921, the next day after receiving the car; that the policy disclosed that $1,300 of the purchase price remained unpaid; and that plaintiff had possession of the car and used it in operating a bus line between Minneapolis and Sandstone from the time he received it until it was burned on September 12, 1921.

Plaintiff had previously operated another bus line and was desirous of again engaging in that business. He and Dr. A. C. Lundgren had been friends for several years and he sought to interest the doctor in the project, or to obtain financial assistance from him. On August 17, 1921, Dr. Lundgren, Dr. O. A. Olson, a friend of his, and plaintiff entered into a contract, known and designated as Exhibit 1, in which they agreed "to associate themselves together and organize as a corporation * * * for the purpose of owning and operating a line of automobile omnibuses" between the cities of Minneapolis and Duluth and intermediate points. The contract recited that Lundgren had paid $500 into the business "which $500.00 have been used as a first payment on the purchase of an automobile omnibus for the sum of $1,800.00," and that Olson agreed to pay $500 into the business as the first payment for another automobile omnibus for use in the business. It provided that plaintiff should devote all his time to and manage the business and receive $150 per month as compensation for his services but payable only out of net profits. It also provided for terminating the business if at any time operated at a loss. It also contained these provisions:

"All net profits of the said business in excess of the aforesaid compensation to the said Erickson shall be used: first, for the payment of the balance of the purchase price of the said omnibuses, and, second, to reimburse the said Olson and Lundgren respectively the amounts that they shall have paid into the said business, and

when the said omnibuses shall have been paid for in full and the said Olson and Lundgren shall have been so reimbursed, then the said omnibuses shall become the property of the said business, and the said Olson, Lundgren and Erickson shall then each be considered as having an investment of five hundred ($500.00) dollars in the said business, and when the said contemplated corporation is fully organized stock for the amount of five hundred ($500.00) dollars shall be issued to each of them for his said investment.

"In case the aforesaid business is terminated before the said Olson and Lundgren are reimbursed in full the respective amounts that they shall have paid into the said business then they shall be reimbursed in full before the said Erickson shall be entitled to claim any share in the assets of the said business."

The jury could find that pursuant to Exhibit 1 Olson and Lundgren purchased another car from the Templeton company on August 20, 1921, under a conditional sales contract on which Olson made a cash payment of $500. Also that on August 23, 1921, Olson and Lundgren executed a conditional sales contract to the Templeton company for the car purchased by plaintiff on August 10, 1921, but that plaintiff had no knowledge of the execution of this contract until long after the burning of the car. Defendant presented evidence tending to prove that Olson and Lundgren executed this conditional sales contract on August 10th and before the delivery of the car to plaintiff, but this is denied by plaintiff and also by Olson and Lundgren, both of whom testify positively that the first transaction which they ever had with the Templeton company was on August 20th when they purchased the other car, and that this contract was executed on August 23d, the next day after their return from an outing in Wisconsin. The evidence was sufficient to justify the jury in finding that plaintiff was the owner of the car when the policy was issued, but with $1,300 still due upon the purchase price as stated in the policy.

Defendant insists that the contract, Exhibit 1, operated to transfer the ownership of the car to Lundgren and Olson. This contract contains no express provision transferring the title to them, and no

express agreement by plaintiff to transfer it. The contract contemplated the organization of a corporation but no steps were ever taken to organize one, and the entire project seems to have been abandoned after the loss of this car. The contract recites that Lundgren had paid $500 into the business which had "been used as a first payment on the purchase of one automobile omnibus," presumably referring to the car in question although the contract does not so state. In fact Lundgren had not paid any money; he had merely signed a note with plaintiff to the bank for the amount of the initial payment on this car. But that was before the making of the agreement evidenced by Exhibit 1, and both he and plaintiff testify that he signed this note merely as a surety for plaintiff. The contract, Exhibit 1, contemplated that the balance of the purchase price of both cars should be paid out of the profits, also that the amounts paid by Olson and Lundgren should be repaid out of the profits, and provided that when these payments had been made "then the said omnibuses shall become the property of the said business, and the said Olson, Lundgren and Erickson shall then each be considered as having an investment of five hundred ($500.00) dollars in the said business." The contract contains no provision specifying by whom or in what manner the title to these cars was to be held prior to the time that they became "the property of the said business" under the above provision, nor purporting to define the interests of the parties therein prior to that time. The second car was purchased by Olson and Lundgren and the title, subject to the rights of the vendor, vested in them and apparently so remained. The first car was purchased by plaintiff and the title vested in him, and he had obligated himself to pay the unpaid purchase price.

As before stated Olson and Lundgren, without the knowledge of plaintiff, subsequently assumed liability for this unpaid purchase price, but this did not relieve plaintiff from liability therefor and there was no transfer of title to Olson and Lundgren unless it be implied from the contract in question. The contract contains a further provision that if the business is terminated before Olson and Lundgren are reimbursed for their expenditures they are to be

reimbursed in full "before the said Erickson shall be entitled to claim any share in the assets of said business." This provision is stressed by defendant, but it simply means that if the business is wound up Olson and Lundgren are to be repaid all their advances before any of the assets go to plaintiff. It is true that plaintiff's credit was not high, and that Olson and Lundgren were financially responsible, and that on being sued therefor they paid the balance due on the car purchased by plaintiff. And it is doubtless also true that the amount recovered on the policy will ultimately go to them.

There were many other facts brought out at the trial but we deem it unnecessary to prolong this opinion by rehearsing them further than to say that plaintiff made prompt report of the loss and filed proofs of claim therefor as owner, and that defendant's adjuster agreed upon and fixed the amount of the loss at the sum for which this action is brought. We are of opinion that the evidence made the question of whether plaintiff had transferred the title to the automobile a question of fact for the jury and that their verdict should stand.

Defendant complains of many of the rulings admitting or excluding evidence, but we find none in which the court exceeded its discretion, and none which raises a question of sufficient moment to justify special mention. Defendant also complains of portions of the instructions to the jury and of the failure to give other instructions which it requested. The issues were submitted to the jury fairly and we find no reversible errors in the instructions. Most of defendant's requests were given, and those not given, so far as correct, were sufficiently covered in the general charge.

Order affirmed.